UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT DEAN LEWIS, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Civil No. 05-18-B-S |
| | ) | Criminal No. 02-61-B-S |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Robert Dean Lewis has filed a 28 U.S.C. § 2255 motion seeking relief from his federal guilty-plea conviction on two firearm counts. Lewis lists two habeas grounds. First, he states that he pled guilty without understanding the nature of the charge against him, because his counsel was ineffective in misrepresenting the United States burden apropos the 18 U.S.C. § 924(c) violent crime element. Second, Lewis argues that the government's version of the offense conduct did not provide factual basis sufficient to support the guilty plea to the § 924(c) offense. In Lewis's direct appeal, the First Circuit Court of Appeals concluded that there was "no manifest injustice in enforcing paragraph five of the plea agreement in which [Lewis] waived his right to appeal the conviction and sentence." The appeal was dismissed. The United States argues that it is entitled to summary dismissal because of Lewis's express waiver of his right to appeal and right to file a collateral attack. As explained below, I conclude that the United States is correct, and I recommend that the Court **DISMISS** this 28 U.S.C. § 2255 motion.

*Discussion*

Paragraph five of Lewis's plea agreement provides:

> In exchange for the government's concession in this Agreement, defendant waives, to the full extent of the law, any right to appeal or collaterally attack the conviction and sentence, unless the court imposes a custodial sentence greater than 10 years.  If the custodial sentence is greater than 10 years, the defendant may appeal from the sentence imposed upon him, but not from the conviction.  The government will be free to support on appeal the sentence actually imposed.  If the defendant believes that the Government's recommendation is not in accord with this Agreement, defendant will object at the time of sentencing.  Otherwise, objection will be deemed waived.

(Plea Agreement at 3.)  The Court sentenced Lewis to two consecutive sentences which aggregated less than ten years.

With respect to the Rule 11 colloquy and Lewis's waiver of his right to attack his conviction and sentence in the future, the Court explained:  "[I]f I proceed to enter a judgment of guilty and sentence you on the basis of your guilty plea, except for very limited circumstances, you will have no right of appeal from your conviction.  Do you understand?" (Waiver Indictment, Arraignment, & Rule 11 Tr. at 12.)   Lewis responded in the affirmative.  Later on in the colloquy the prosecutor drew the Court's attention to the fifth paragraph of the plea agreement, describing it as "an additional provision over and above the normal plea agreements from [his] office and is a waiver of the defendant's right to appeal and collaterally attack this matter – this judgment."  (Id. at 14.)  The colloquy continued:

| | |
|---|---|
| The Court: | You also agree to dismiss the indictment; is that correct? |
| Mr. Love (prosecutor): | That's correct, Your Honor. |
| The Court: | Is that Correct, Mr. Haddow (defense counsel). |
| Mr. Haddow: | Yes, Your Honor. |

| | |
|---|---|
| The Court: | Mr. Lewis, is that your signature on the last page of that plea agreement? |
| The Defendant: | Yes, Sir. |
| The Court: | Did you sign that plea agreement voluntarily? |
| The Defendant: | Yes, Sir. |
| The Court: | Did you read it before you signed it? |
| The Defendant: | Yes Sir. |
| The Court: | Did you understand it before you signed it? |
| The Defendant: | Yes, Sir. |
| The Court: | In signing it, did you intend to agree to all its terms and conditions? |
| The Defendant: | Yes, Sir. |
| The Court: | All Right.  Mr. Lewis, I want you to understand that this plea agreement contains a provision that you are giving up your right to appeal or to collaterally attack, and by collaterally attack – that includes a habeas corpus petition --  that you give up that right to attack the conviction and the sentence as long as the sentence is no greater than ten years.  Do you understand that? |
| The Defendant: | Yes, Sir. |
| The Court: | That even if the sentence is greater than ten years, you only have a right to appeal from the sentence, but not from the conviction.  Do you understand that? |
| The Defendant: | Yes, Sir. |
| The Court: | Do you understand that you normally would have limited rights to appeal from the conviction? |
| The Defendant: | Yes, Sir. |
| The Court: | And you are giving up those rights? |
| The Defendant: | Yes. |
| The Court: | Did you discuss this thoroughly with your attorney? |
| The Defendant: | Yes, Sir. |
| The Court: | Mr. Haddow, are you satisfied that your client fully understands his right to appeal that he is waiving? |
| Mr. Haddow: | Yes, Your Honor. |
| The Court: | And that he is waiving it knowingly and intentionally? |
| Mr. Haddow: | Yes, Your Honor. |

(Id. at 14-16.)

The First Circuit Court of Appeals, in rebuffing Lewis's direct appeal, has already

determined that this waiver is enforceable, a determination that, while brevis, is in

keeping with its not so brevis analysis of such waivers vis-à-vis appeal rights in United

States v. Teeter, 257 F.3d 14, 21 -26 (1st Cir. 2001) and United States v. De-La-Cruz

3

Castro, 299 F.3d 5, 10 -14 (1st Cir. 2002).   Compare United States v. Aquino-De La

Rosa, __ F.3d __, 2005 WL 1869999 (1st Cir. Aug. 9, 2005).  The enforceability

concerns and exceptions to waiver certainly would not be more defendant-friendly

apropos collateral attack waivers.  See United States v. Cockerham, 237 F.3d 1179, 1182

-83 (10th Cir. 2001) ("[W]e conclude that a waiver of collateral attack rights brought

under § 2255 is generally enforceable where the waiver is expressly stated in the plea

agreement and where both the plea and the waiver were knowingly and voluntarily made.

Of course, the same exceptions to the waiver of the right to appeal, if they arise, would be

available to the waiver of the right to collateral attack. In other words, the constraints

which apply to a waiver of the right to direct appeal also apply to a waiver of collateral

attack right.").

      With the First Circuit already having ruled that the waiver was enforceable, see

United States v. Michaud, 901 F.2d 5, 6 (1st Cir.1990) ("We note that certain other

claims raised in the § 2255 motion were decided on direct appeal and may not be

relitigated under a different label on collateral review."); Dirring v. United States, 370

F.2d 862, 864 (1st Cir. 1967) ("Although the strict doctrine of res adjudicata does not

apply to § 2255 motions, it is firmly settled that issues disposed of on a prior appeal will

not be reviewed again by way of such a motion."), the only question for this Court then is

whether Lewis's ineffective assistance claim, which the First Circuit most likely would

not have entertained on direct appeal, see United States v. Parra-Ibanez, 936 F.2d 588,

593-94 (1st Cir. 1991), adds a meaningful nuance to the waiver enforceability inquiry.

      The First Circuit, in offering guidance to the court in Teeter for situations where a

defendant seeks to be relieved of his or her waiver, explained:

In sum, we conclude that plea-agreement waivers of the right to appeal from imposed sentences are presumptively valid (if knowing and voluntary), but are subject to a general exception under which the court of appeals retains inherent power to relieve the defendant of the waiver, albeit on terms that are just to the government, where a miscarriage of justice occurs. In charting this course, we recognize that the term "miscarriage of justice" is more a concept than a constant. Nevertheless, some of the considerations come readily to mind: the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result. Other considerations doubtless will suggest themselves in specific cases.

257 F.3d at 25 -26.

Subsection 924(c)(1)(A)(i) of title 18 applies to "any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A)(i).

The prosecution version explained:

The United States would offer audio tapes of conversations between James Mayo and the Defendant which would, in sum and substance, show that on or about October 7, 2001, the Defendant approached his friend, James Mayor, for the purpose of proposing that the two of them commit an armed robbery of the Norridgewock Pawn Shop and Trading Post. The Defendant also asked Mr. Mayo to obtain a firearm for the Defendant to use in the armed robbery. The Defendant intended to take $10,000 cash from the person of the owner of the Trading Post.

The United States would offer the testimony of Somerset County Sheriff's Department Lieutenant Carl Gottardi and United States Bureau of Alcohol and Tobacco and Firearms Special Agent Brent McSweyn, that James Mayo reported the Defendant's proposal to authorities on the same day that the Defendant contacted him, October 7. Authorities enlisted Mr. Mayo's assistance for further investigation of the Defendant's proposals. On October 8 and 10, the Defendant was tape recorded having

5

conversations with Mr. Mayo in Mr. Mayo's car.  The taping of the conversations was arranged and monitored by law enforcement agents.

The audio tapes and testimony would show that on October 11, 2001, the day that the Defendant intended to commit the armed robbery, a disabled firearm, specifically a PJK 9mm semiautomatic handgun with serial number F26624 (the "firearm") was placed in the glove box of Mr. Mayo's automobile by a law enforcement officer.  The firearm had been treated with a substance which is invisible to the eye but which is visible under ultraviolet light.  Law enforcement officers then monitored Mr. Mayo and followed him in his automobile as he drove to the Defendant's home.  When Mr. Mayo arrived at the Defendant's home, the Defendant entered Mr. Mayo's automobile.  The law enforcement officers then heard a conversation between the Defendant and Mr. Mayo which indicated that the Defendant had possessed the firearm and that the Defendant had instructed Mayo to go to a Wal-mart store to purchase items intended for use in the commission of the robbery.  The conversation was recorded and the tape would be offered as evidence.  Law enforcement officers, including Gottardi and McSweyn, then stopped Mr. Mayo's automobile and arrested the Defendant.

(Prosecution Version at 1-2.)

During the plea colloquy, this Court explored the factual basis for the plea with Lewis and the prosecutor, focusing on the prosecution's version and, concluded that there was indeed a factual basis for Lewis's plea to both counts of the indictment.  (Waiver Indictment, Arraignment, & Rule 11 Tr. at 12-14.)

Therefore, this Court has already made a determination that the government's version of the offense conduct <u>did</u> provide factual basis sufficient to support the guilty plea to the § 924(c) offense and, accordingly, Lewis's second 28 U.S.C. § 2255 ground cannot be a basis for recommending habeas review despite his waver of appeal/§ 2255 rights on the grounds that there has been a miscarriage of justice.  With respect to Lewis's ineffective assistance of counsel overlay, if this Court independently concluded that there was a factual basis for the plea to 18 U.S.C. § 924(c)(1)(A)(i) offense based on the prosecution's version then it cannot be said that it was constitutionally inadequate

representation, see Strickland v. Washington, 466 U.S. 668 (1984), for Lewis's attorney to advise his client that the prosecution's version was a sufficient factual skeleton which if fleshed out at trial could lead a jury to convict of Lewis on that count.  So, although I can imagine a hypothetical ineffective assistance of counsel claim that might form the basis for declining to hold a defendant to a waiver of appeal and/or 28 U.S.C. § 2255 rights, Lewis's claim that his attorney misinformed him vis-à-vis the nature of the government's 18 U.S.C. § 924(c)(1)(A)(i) burden is not.[1]

### Conclusion

For the reasons articulated above I recommend that the Court **SUMMARILY DISMISS** Lewis's 28 U.S.C. § 2255 motion.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 12, 2005.

---

[1]   I have reviewed the excerpts that Lewis has submitted of the taped conversations between him and Mayo and, while they show some equivocation on Lewis's part about the need to use the gun for the robbery, his statements apropos the gun are not as exculpatory apropos the 18 U.S.C.§ 924(c) offense as he imagines.